[No. B058279. Second Dist., Div. Three. Apr. 6, 1993.]

ROBERT J. REID et al., Plaintiffs, Cross-defendants and Appellants, v. HERBERT BALTER et al., Defendants, Cross-complainants and Appellants.

COUNSEL

Joel F. Tamraz for Defendants, Cross-complainants and Appellants.

Maynard J. Klein for Plaintiffs, Cross-defendants and Appellants.

OPINION

**CROSKEY, J.**—Defendants Maureen and Herbert Balter (defendants) appeal from a judgment entered in favor of plaintiffs Lorene and Robert Reid (plaintiffs). Following a jury trial on the merits, defendants challenge an order which vacated a prior order of dismissal that had been entered after plaintiffs had failed to appear at a scheduled pretrial status conference. Defendants also challenge a subsequent order which denied their motion for discretionary dismissal for failure to timely prosecute. Plaintiffs have cross-appealed; they challenge the amount of prejudgment interest they were awarded.

In rejecting the defendants' contentions, we conclude that (1) the challenge to the order vacating the dismissal is without merit, (2) defendants

have failed to show they were prejudiced at trial by the order which denied their motion for discretionary dismissal, (3) defendants should have challenged the denial of their motion for dismissal by immediately petitioning the Court of Appeal for a writ of mandate rather than waiting to challenge it on appeal after the case was tried and judgment entered, and (4) plaintiffs are entitled to prejudgment interest based on a different rate than the one used by the court. We therefore affirm the judgment in part and reverse it in part.

PROCEDURAL HISTORY

Plaintiffs filed this action on May 16, 1986, alleging that pursuant to a contract for sale of real property (consisting of certain rental units), defendants had given them a promissory note for $50,000 and thereafter refused to make payments on the note. Plaintiffs sought damages and enforcement of a vendor's lien.

Defendants answered the complaint and filed a cross-complaint against plaintiffs. In the cross-complaint, defendants alleged that when plaintiffs sold them their interest in the rental property, plaintiffs left defendants with unpaid bills which defendants had to pay. Defendants alleged that payment of such bills cost them $48,546.60 and they were entitled to have plaintiffs pay them one-half of that amount. An at-issue memorandum was filed by plaintiffs on April 22, 1987.

Plaintiffs gave defendants notice of a trial setting conference to be held May 15, 1989. Part of that notice included a copy of the superior court's form entitled "Trial Setting Conference and Intention to Dismiss on Courts [*sic*] Own Motion." That form includes a warning to a plaintiff that if the plaintiff's case is more than two years old and the plaintiff or plaintiff's attorney does not personally appear at the trial setting conference, the court will enter an order dismissing the action for lack of prosecution pursuant to Code of Civil Procedure, section 583.420, subdivision (a)(2)(B). A more general warning of sanctions informs the parties that the trial court will impose "sanctions" for failure to comply with the delay reduction rules and orders made by the court.

At the May 15, 1989, trial setting conference, the court ordered the matter to arbitration. The court's order stated in part: "Arbitration award to be submitted within 120 days. Status conference set for 10-27-89 at 10:30 AM in Dept. 3. Counsel are ordered to file status conference questionnaires at least 2 court days prior to hearing. Notice waived." The order also stated that if the court's orders were violated, "sanctions may be imposed by way of contempt, payment of money, including attorney's fees and costs incurred by other parties, and/or removal of the case from the civil active list."

After the arbitrator made his award, plaintiffs filed a request for a trial de novo. However, when plaintiffs failed to appear at the scheduled status conference on October 27, 1989, the trial court ordered the case removed from the civil active list, ordered the at-issue memorandum vacated and dismissed the case, citing Code of Civil Procedure section 583.410 for the dismissal.[1]

On January 23, 1991, 15 months after the case had been dismissed, plaintiffs filed a motion to set the case for a status conference and assign a trial date. Plaintiff's motion stated that it was being made "upon the grounds that the within action has been pending four years and eight months and must be set for trial to avoid the five year mandatory dismissal bar." Defendants filed opposition to the motion, contending the court had no jurisdiction to set the case for trial because it had already been dismissed. On the day set for hearing of the motion, defendants' attorney appeared in court to argue the matter but the clerk indicated to the court that plaintiffs' attorney had telephoned that very morning and taken the motion off calendar.

On February 13, 1991, sixteen months after the case had been dismissed and three months before the five-year anniversary of the case, plaintiffs filed a motion to vacate the prior dismissal and to set the case for status conference and trial. Defendants filed opposition. The court (1) vacated the dismissal, (2) reinstated the complaint and cross-complaint, (3) ordered plaintiffs' attorney to pay sanctions to defendants' attorney and to the County of Los Angeles, (4) denied the motion to specially set for trial, (5) granted the motion to set a status conference, (6) indicated that it was vacating the order of dismissal without prejudice to defendants' bringing a motion to dismiss for failure to prosecute, (7) shortened time for notice of such a motion, and (8) set a hearing date of March 29, 1991, for the motion to dismiss.

Thereafter, defendants filed their motion to dismiss. The motion was denied. The court's minute order states in part: "The court finds reasonable diligence by plaintiffs in prosecuting this action."

The case went to trial and, on May 28, 1991, plaintiffs obtained a judgment in the sum of $50,000. The court awarded interest at the parties'

---

[1]Unless otherwise indicated, all statutory references herein are to the Code of Civil Procedure.

Section 583.410, together with section 583.420, permit a trial court to exercise its discretion and dismiss an action for delay in prosecution if the case is not brought to trial within three years after it is filed (or two years if the Judicial Council prescribes the shorter time for the court because of the condition of the court's calendar or because of other reasons affecting the conduct of litigation or the administration of justice). The dismissal may be pursuant to the court's own motion or that of the defendant.

contract rate of 12 percent. However, the court ruled the contract rate of interest would only apply up through March 1, 1988 (which plaintiffs state in their brief was the date the last installment on the promissory note became due). The judgment stated that after March 1, 1988, the interest rate would be 10 percent to the date of judgment.

Defendants have appealed from the judgment, challenging the order which vacated the dismissal of the action and the order which denied their motion to dismiss. Plaintiffs have also appealed. They challenge the court's decision to award them 12 percent interest only up through March 1, 1988.

## FACTUAL BACKGROUND

The factual background of this case is gleaned from declarations submitted by the parties in connection with the plaintiffs' motion to vacate and the defendants' subsequent motion to dismiss.

### 1. Attorney Klein's Declaration

In support of plaintiffs' motion to vacate the dismissal and set the case for trial, their attorney, Maynard J. Klein, submitted his declaration. In it, he stated that even though the case had been dismissed on October 27, 1989, he was not aware of the dismissal until 15 months after it occurred. According to Klein, the dismissal came about in the following manner.

Klein was due to appear at the trial setting conference on May 15, 1989, but due to a calendar conflict, he sent a substitute attorney to that conference. Shortly after May 15, 1989, that substitute attorney advised Klein that the case had been referred to arbitration but, "to the best of [Klein's] recollection," the substitute did not advise Klein that the trial court had also set a status conference for October 27, 1989. For that reason, Klein did not appear at the status conference. He never received any notice from the trial court to the effect that if plaintiff did not attend the October 27, 1989, status conference, the case would be dismissed. He has always been under the impression that after one files a request for a trial de novo, "in due course the Court would assign a date for another trial setting or status conference." That assumption on his part was based on his experience in handling one other case where a party had requested a trial de novo after an arbitration.

When, by April 4, 1990, he had not heard anything about a new conference date, Klein sent his attorney service to look at the court's file to make sure that the request for trial de novo had actually been filed and to see when the case would be set for trial. Klein "assumed from the response [of the

attorney service] that nothing had occurred since the filing of the Request for Trial de Novo and therefore continued to assume that a trial setting conference would thereafter be scheduled by the Court."[2] According to Klein, his "experience in Department 1 of the Court, during the second half of 1990, was that, except for priority matters, only 'five year cases' were being assigned for trial" and he had previously been so advised by the then-presiding judge of the superior court. Klein stated that necessary discovery had been completed before the arbitration hearing of September 20, 1989, and the case had been ready for trial since that time.

### 2. *Declaration of Defendants' Attorney*

Defendants' attorney submitted his declaration in support of defendants' motion to dismiss for lack of prosecution. In it he noted that prior to the 15-month period of inaction on plaintiffs' part after the case was dismissed, there had also been periods of inactivity while the case was actually pending, specifically two 10-month periods and one 8-month period during which nothing happened in this case. The attorney stated that because of the long passage of time since the case was filed, defendants would be prejudiced if the case proceeded to trial because "the memories of the witnesses have dimmed, the tenants who lived in the apartment building during the period in question have left for parts unknown and . . . workman [*sic*] who did work on the building are no longer available to testify." Defendants' attorney also noted that plaintiffs took more than three years to answer defendants' cross-complaint and that plaintiff Robert Reid had refused to appear at a noticed deposition because the place designated for the deposition was more than 150 miles from plaintiff's residence.

### 3. *Declaration of Robert Anderson*

A person by the name of Robert Anderson submitted a declaration in support of plaintiffs' opposition to defendants' motion to dismiss, giving the following evidence. Anderson had known plaintiffs and defendant Herbert Balter for many years and acted as the real estate broker on the sale of the property over which this action was filed. During the pendency of this action he acted as a liaison between plaintiffs (who live in northern California) and their attorney regarding "the handling of this action." He had also been in contact with defendants for the purpose of facilitating a settlement. In May or June of 1990, he telephoned defendants and, in the course of their conversation, "Defendant stated . . . he would be able to keep the litigation between him[self] and the plaintiffs in court for years. Defendant did not tell

---

[2]The response of the attorney service was to simply note when the at-issue was filed and when the request for trial de novo (which it called an "at-issue") was filed.

[Anderson] . . . that the litigation had been dismissed seven or eight months earlier." Anderson reported this conversation to attorney Klein shortly thereafter.

## DISCUSSION

### 1. *Validity of the October 1989 Order of Dismissal*

■  Defendants argue that the October 1989 dismissal of this case was both (1) authorized by law[3] and (2) appropriate since plaintiffs failed to appear at the October 1989 status conference. Defendants, however, appear to be confused between the authority of a court to dismiss a case because of the actions (or inactions) of its litigants and the procedural requirements that precede any such dismissal. At a minimum, such requirements include notice to the plaintiff of a motion or intent to dismiss and an opportunity for plaintiff to be heard. (*Cordova* v. *Vons Grocery Co.* (1987) 196 Cal.App.3d 1526, 1531 [242 Cal.Rptr. 605].) Contrary to defendants' assertion (discussed below), plaintiffs were *not* given notice that their case would be dismissed if they failed to appear for the status conference set for October 27, 1989. Therefore, dismissal was a clear violation of plaintiffs' due process rights (*ibid.*) and the order of dismissal is void (*Lovato* v. *Santa Fe Internat. Corp.* (1984) 151 Cal.App.3d 549, 553 [189 Cal.Rptr. 838]).

Defendants resist this conclusion. They assert (1) plaintiffs *were* given notice that their case might be dismissed if they failed to appear at the October 1989 status conference and (2) such notice was given when plaintiffs received, from the court, written notice of the May 15, 1989, trial setting conference. As indicated above, that written notice of the trial setting conference stated that if plaintiffs' case was more than two years old, it would be dismissed if they or their counsel failed to appear for the trial setting conference.

We do not agree that warning plaintiffs their case could be dismissed if they failed to appear on May 15, 1989, for a trial setting conference is sufficient notice to sustain dismissing the case for failure to appear on October 27, 1989, at a status conference. Further, the court order issued on May 15, 1989, after the trial setting conference was held, specifically stated

---

[3]The law to which defendants refer is California's Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.). Provisions of that act stress the importance of having trial courts move cases along swiftly and permit courts to sanction attorneys and litigants who do not cooperate in this state's efforts to reduce the backlog of our trial courts. Among the sanctions mentioned is dismissal of the case. (See Gov. Code, §§ 68607 & 68608 [§ 68608 became operative July 1, 1992].) Additionally, defendants note that section 583.410 permits trial courts to dismiss an action for delay in prosecution. (See fn. 1, *ante.*)

which sanctions might be imposed for failure to appear at the October 1989 status conference, and dismissal of the action was *not* one of them. Thus, not only was the sanctions notice for the May 1989 hearing not sufficient for the subsequent October 1989 hearing, but the notice given for that later hearing implied that dismissal of the case was not a possible sanction for failure to attend it.[4]

### 2. *Validity of the Order Vacating the Dismissal*

■ Section 473 provides in part: "The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order." Courts also possess inherent power to set aside void judgments. (*Rogers* v. *Silverman* (1989) 216 Cal.App.3d 1114, 1121 [265 Cal.Rptr. 286].) Because the October 1989 order of dismissal in this case was void, plaintiffs were entitled to have it set aside. "It is well settled that a judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion, at any time after its entry, by the court which rendered the judgment or made the order. [Citations.]" (*In re Dahnke* (1923) 64 Cal.App. 555, 560 [222 P. 381]; accord, *Hayashi* v. *Lorenz* (1954) 42 Cal.2d 848, 851 [271 P. 18].) In this case, an inspection of the record shows that plaintiffs received no notice that their case might be dismissed if they did not attend the October 1989 status conference; indeed it shows that the warning regarding sanctions for failure to attend that conference mentioned specific sanctions, and dismissal of the case was not one of them. Thus, the order which vacated the order of dismissal is clearly valid.

### 3. *Validity of the Order Denying Defendants' Own Motion to Dismiss*

#### a. *The Factual Basis for Defendants' Position on Appeal*

In arguing that the trial court erred in not granting their motion to dismiss, defendants point to the several lengthy periods of plaintiffs' inactivity while the case was pending and to the 16-month period of inactivity while the case lay dismissed. Defendants argue these delays in prosecution were unjustified

---

[4]Defendants try to find some support in the fact that plaintiffs waived notice of the order made at the May 15, 1989, hearing (the hearing at which their "stand-in" attorney appeared). By that May 15, 1989, order, the trial court set the October 1989 status conference hearing. Defendants argue that since plaintiffs waived notice of what transpired at the May 1989 hearing, they should not claim they were not aware that they had to appear in October. However, defendants' argument is irrelevant because the orders of which plaintiffs waived notice were not sufficient to apprise them they might suffer dismissal if they did not appear in October. In other words, plaintiffs did not waive notice of a warning that dismissal might occur if they did not appear in October 1989; they merely waived further notice that they were supposed to appear in October 1989.

and were prejudicial to them because they lost track of witnesses (tenants and workmen) and because the memories of the witnesses they did secure had faded. Defendants also argue that after the case was dismissed, they were "lulled into the security of believing the case was over and gone, and that further contact was not necessary with any of those witnesses." Defendants assert that rather than becoming increasingly diligent about getting their case to trial as its five-year anniversary approached, as plaintiffs were required to do (*Wilshire Bundy Corp.* v. *Auerbach* (1991) 228 Cal.App.3d 1280, 1287 [279 Cal.Rptr. 488]), plaintiffs became less diligent with the result that the dismissal went unnoticed for 16 months.

### b. *Defendants' Burden on Appeal*

When an appeal is taken from a judgment and the appellant alleges the trial court made an erroneous pretrial ruling, it is not enough to show that the ruling was indeed erroneous. In addition, the appellant must also "show resulting prejudice, and the probability of a more favorable outcome, *at trial.*" (*Waller* v. *TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 [16 Cal.Rptr.2d 38], [relying on both statutory law (§ 475) and constitutional law (Cal. Const., art. VI, § 13)].)

Assuming arguendo the trial court abused its discretion in not granting defendants' motion for discretionary dismissal (*Salas* v. *Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 346 [228 Cal.Rptr. 504, 721 P.2d 590]), defendants have not made a sufficient showing that they were prejudiced at trial by the denial of their motion and that it was probably this prejudice that caused the verdict to go against them. While the record does contain defendants' attorney's declaration wherein he stated that because of the passage of time in this case, defendants' tenant and workmen witnesses had moved away and were not available for trial, this declaratory evidence is too broad, too general. It would have been better to give specifics, such as who the missing tenants and workers were and what relevant facts their testimony would have established. From the general, conclusionary statements of the defendants we are unable to determine just how, if at all, they were *actually* prejudiced at trial by the court's denial of their motion to dismiss. On such a showing we cannot conclude that the trial court's allegedly erroneous ruling rendered the ultimate result in this case unjust. (*Waller* v. *TJD, Inc., supra,* 12 Cal.App.4th at p. 833.)

### c. *Public Policy Considerations*

There is another reason for denying defendants appellate relief now, a strong public policy reason. After their motion for discretionary dismissal

was denied, and prior to trial, defendants had the option of seeking pretrial review by petitioning for a writ of mandamus to compel the trial court to grant their motion to dismiss. Instead, defendants let this case proceed to trial, thereby expending the trial court's, the plaintiffs', and their own resources in both trial and posttrial proceedings, proceedings which defendants now contend should never have taken place.

While the discretionary dismissal statute was enacted for the benefit of defendants named in lawsuits, it was also enacted for the public's benefit, i.e., to expedite the administration of justice by declogging court calendars and putting an end to elderly cases. (*Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 400 [153 Cal.Rptr. 912].) By letting this case proceed to trial instead of petitioning for mandamus relief when their motion to dismiss was denied, defendants thwarted both purposes of the statute. It was counterproductive to wait until *after* the case had proceeded to trial and judgment to request review of the order denying dismissal. As defendants failed to seek a pretrial resolution of the dismissal issue, we are not inclined to now disturb plaintiffs' victory on the merits.

### 4. *The Validity of the Trial Court's Award of Interest*

■ In their cross-appeal, plaintiffs challenge the decision of the trial court to only allow interest at the contract rate up through the date the last installment became due on the promissory note on which they sued. Plaintiffs assert the contractual rate should have applied up to the date of judgment. They rely on Civil Code section 3289 which states in part: "Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, *until the contract is superseded by a verdict or other new obligation.*" (Italics added.) Defendants have not addressed the cross-appeal in their briefs. We assume they have conceded the validity of plaintiffs' position and we hold the trial court erred in not applying the 12 percent contractual interest rate up to May 28, 1991, the date of judgment.

### DISPOSITION

The judgment is reversed insofar as it awards interest at the contract rate only through March 1, 1988, rather than up to the date of judgment. The judgment is affirmed in all other respects. The cause is remanded to the trial

court for further proceedings consistent with the views expressed herein. Costs on appeal to plaintiffs.

Klein, P. J., and Hinz, J., concurred.